## STATE OF CONNECTICUT *v.* CHARLES GREEN
## (AC 18369)

Lavery, C. J., and Foti and Landau, Js.

Argued September 14, 2000—officially released March 6, 2001

*Kent Drager*, senior assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio Vitale*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Charles Green, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a), murder as an accessory in violation of General Statutes §§ 53a-8 and 53a-54a (a) and criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c.[1] On appeal, the defendant claims that (1) the evidence was insufficient to establish his guilt of conspiracy to commit murder and murder as an accessory, (2) the court improperly instructed the jury not to consider the effect

---

[1] General Statutes § 53a-217c (a) provides in relevant part: "A person is guilty of criminal possession of a pistol or revolver when he possesses a pistol or revolver, as defined in section 29-27, and (1) has been convicted of a felony . . . ." In the present case, the defendant stipulated at trial that he previously had been convicted of a felony. The defendant does not challenge his conviction under § 53a-217c (a) (1) in this appeal.

that smoking marijuana had on an eyewitness to the crime when the eyewitness admitted to smoking five marijuana cigarettes prior to making his observations, (3) the court improperly allowed the state to present evidence of an alleged prior crime, (4) the court improperly instructed the jury on the burden of proof beyond a reasonable doubt and (5) the court improperly allowed the state to exercise a peremptory challenge against a prospective juror, who was black, when the state's reason for excusing the prospective juror was insufficient and pretextual. We reverse the judgment of the trial court in part and affirm it in part.

The jury reasonably could have found the following facts. Tyrese Jenkins, Hopeton Wiggan, David D., Kenny Cloud and Brucie B. were members of a gang[2] named after a housing project located in the Fair Haven section of New Haven. On October 7, 1996, at approximately 11:15 p.m., the gang went to a housing project, also located in New Haven and referred to as "the ghetto," to settle a dispute with the defendant and others, who were members of a rival gang that resided there.[3]

Cloud stayed in the car, while Jenkins, Wiggan, David D. and Brucie B., with guns at their sides, went looking for the defendant. The four men entered the housing project through a hole in a fence and, as they approached, they noticed the defendant along with three others, namely, Duane Clark, Bobby "B.O." Cook and Ryan Baldwin, standing and talking near a green electrical box. When the defendant and the others saw the gang members approaching, Clark exclaimed, "Shoot the motherfucker," and a gunfight ensued.

When the first shots were fired, Wiggan and Brucie B. ran for cover behind a dumpster. Jenkins ran diagonally

---

[2] The record does not reveal the last name of David D. or Brucie B.

[3] The dispute arose from an earlier confrontation at a club located in New Haven where the defendant allegedly shot at some members of the rival gang.

across a parking lot located in the complex. Both sides exchanged a barrage of gunfire. As Wiggan, Brucie B. and Jenkins retreated from the complex, Jenkins was shot in the leg. Jenkins hobbled quickly away from the complex, but another bullet struck him and he collapsed. Wiggan and Brucie B. went back into the complex and found Jenkins sitting up against a wall. The two picked up Jenkins and carried him to the car. Cloud, David D., Brucie B. and Wiggan took Jenkins to Yale-New Haven Hospital, where he died from his injuries.

Leroy Townsend, a local man, witnessed the beginning of the disturbance as he stood near the electrical box, smoking marijuana.[4] At trial, Townsend testified that he had heard Clark say, "Shoot the motherfucker," and that he saw the defendant shoot Jenkins.

Arkady Katsnelson, a forensic pathologist, performed an autopsy on the victim. Katsnelson testified that Jenkins suffered two bullet wounds, one of which was fatal. One bullet, a nine millimeter round, entered the lower front portion of Jenkins' right leg and exited through the back of it. The other bullet, a .44 caliber round, which caused the fatal wound, entered through the upper right side of Jenkins' chest just below his collarbone and then penetrated the chest wall, the right lung, the heart, the diaphragm, part of the liver, the organs of the abdomen and eventually lodged in some soft tissue located in his abdominal cavity. We will provide additional facts as needed.

## I

## A

The defendant first claims that the evidence presented by the state was insufficient as a matter of law to sustain his conviction for conspiracy to commit murder

---

[4] Townsend testified that he had smoked five marijuana cigarettes that evening in a relatively short time span.

pursuant to §§ 53a-48[5] and 53a-54a (a).[6] The state concedes, and we agree, that Clark, who was tried with the defendant, may not be considered as a coconspirator.[7] Because the state failed to prove at trial that the defendant had agreed with someone else to murder Jenkins, the evidence was insufficient to sustain his conviction under §§ 53a-48 and 53a-54a (a). See *State* v. *Booth*, 250 Conn. 611, 657–58, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000).

At the close of the state's case-in-chief and again at the close of all of the evidence, the defendant moved for a judgment of acquittal on the basis of the insufficiency of the evidence. The court denied both motions. After the verdict, and again during the sentencing proceeding, the defendant made several oral motions for acquittal. The court denied each of these motions as well.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we

[5] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[6] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[7] The jury found Clark not guilty of conspiracy to commit murder.

determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *James*, 237 Conn. 390, 435, 678 A.2d 1338 (1996). In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . *State* v. *Brown*, 235 Conn. 502, 510, 668 A.2d 1288 (1995).

"While the [trier of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be [proven] beyond a reasonable doubt. . . . If it is reasonable and logical for the [trier] to conclude that a basic fact or an inferred fact is true, the [trier] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . *State* v. *Newsome*, 238 Conn. 588, 617, 682 A.2d 972 (1996). Moreover, [i]n evaluating evidence that could yield contrary inferences, the [trier of fact] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996). As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt; *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994); *State* v. *Patterson*, [229 Conn. 328, 332, 641 A.2d 123 (1994)]; *State* v. *Little*, 194 Conn. 665, 671–72, 485 A.2d 913 (1984); nor does proof beyond a reasonable doubt

require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [trier], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . *State* v. *DeJesus*, supra, 196; see also *State* v. *Sivri*, 231 Conn. 115, 134, 646 A.2d 169 (1994)." (Internal quotation marks omitted.) *State* v. *Schiappa*, 248 Conn. 132, 177–78, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). On the basis of our review of the record, we conclude that the evidence was insufficient to establish that the defendant conspired to murder Jenkins.

"To establish the crime of conspiracy under § 53a-48 . . . it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed. . . . Further, the prosecution must show both that the conspirators intended to agree and that they intended to commit the elements of the underlying offense." (Internal quotation marks omitted.) *State* v. *Booth*, supra, 250 Conn. 657–58.

"To establish the crime of conspiracy [to commit murder . . . the state must show] that an agreement was made between two or more persons to engage in conduct constituting [the crime of murder] and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. . . . While the state must prove an agreement [to commit murder], the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established

by proof of an express agreement to unite to accomplish an unlawful purpose. . . . [T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts. . . . Further, [c]onspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons." (Internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 491–92, 698 A.2d 898 (1997).

Here, the only evidence that the state presented in support of a conspiracy consisted of Clark's statement to "[s]hoot the motherfuckers" and the subsequent gunfight that ensued between the two gangs. As stated previously, the jury acquitted Clark of the conspiracy to commit murder charge, and, thus, he does not qualify as a coconspirator. *State* v. *Robinson*, 213 Conn. 243, 250–53, 567 A.2d 1173 (1989). Moreover, although the state alleged that the defendant also conspired with Cook and Baldwin, the record is devoid of any evidence of an agreement. The record simply does not contain evidence of separate acts and circumstances to support a prior agreement between the defendant and any of the alleged coconspirators. Accordingly, the defendant's conviction of conspiracy to commit murder must be set aside.

B

We next address the defendant's claim that the court improperly concluded that sufficient evidence existed in the record to support his conviction of murder as an accessory in violation of §§ 53a-8[8] and 53a-54a (a).

[8] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

Specifically, the defendant claims that there is insufficient evidence in the record to prove beyond a reasonable doubt either that he aided the person who murdered Jenkins or that he acted with the specific intent to murder him. The state responds that ample evidence exists in the record to support the defendant's conviction of murder under §§ 53a-8 and 53a-54a. We agree with the state.

We first articulate the standard of review applicable to the defendant's claim. "In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Murray*, 254 Conn. 472, 478–79, 757 A.2d 578 (2000).

"The statutory provision governing accessory liability, General Statutes § 53a-8, provides in relevant part that [a] person, acting with the mental state required for the commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct . . . as if he were the principal offender. We have previously stated that a conviction under § 53a-8 requires [the state to prove the defendant's] dual intent . . . [first] that the accessory have the intent to aid the principal and [second] that in so aiding he intend to commit the offense with which he is charged. *State* v. *Foster*, 202 Conn. 520, 525–26, 522 A.2d 277 (1987)." (Internal quotation marks omitted.) *State* v. *Turner*, 252 Conn. 714, 748, 751 A.2d 372 (2000).

"Intent is generally proven by circumstantial evidence because direct evidence of the accused's state

of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . This does not require that each subordinate conclusion established by or inferred from evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . . Nevertheless, because intent to cause the death of a person is an element of the crime . . . that intent must be proven beyond a reasonable doubt. . . . Furthermore, [i]ntent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death." (Citations omitted; internal quotation marks omitted.) Id., 748–49.

Thus, to convict the defendant of murder as an accessory, the jury had to conclude that the defendant had the intent to aid Cook or Baldwin in the crime and that he had the intent to commit the crime itself. The jury logically could not have concluded that the defendant aided Clark because it acquitted Clark of the conspiracy and accessory charges.

The jury reasonably could have found that the defendant had the intent to kill Jenkins. The record contains evidence that the defendant had an ongoing dispute with the victim and the rival gang. Townsend identified the defendant, Clark, Cook and Baldwin as being at the scene of the crime. Moreover, Wiggan testified that the defendant, as well as Cook and Baldwin, were at the scene.[9] The evidence established that the defendant fired multiple shots from his nine millimeter handgun

---

[9] Wiggan did not, however, identify Clark as being present at the scene of the crime.

at the victim and the other members of the rival gang who were involved in the fight. The fact that the defendant fired multiple shots from a nine millimeter handgun at the victim, coupled with the fact that he did this in response to someone saying, "Shoot the motherfuckers," satisfies both of the intent requirements necessary for accessorial liability. See id. Accordingly, we conclude that the evidence in the record is sufficient to support the defendant's conviction of murder.

## II

Next, we address the defendant's claim that the court improperly instructed the jury to disregard Townsend's testimony that he smoked five marijuana cigarettes prior to making his observations because neither party presented evidence as to the effect that the marijuana had on the witness' ability to observe accurately the events on October 7, 1996. Specifically, the defendant argues that the court's instruction to disregard the evidence violated his constitutional rights to confront witnesses and to have the jury evaluate the credibility of witnesses on the basis of properly admitted evidence.[10]

Although the defendant concedes that he did not preserve this issue at trial, he argues that the claim is reviewable under the *Golding* doctrine.[11] The state argues that the claim is not reviewable under *Golding* because the court's instruction did not deprive the defendant of a constitutional right.

"It is well settled that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2)

---

[10] "Because the defendant has failed to provide any independent analysis under the state constitution, we limit our review to the federal constitution." (Internal quotation marks omitted.) *State* v. *Beltran*, 246 Conn. 268, 277 n.7, 717 A.2d 168 (1998).

[11] *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

the claim is of constitutional magnitude, alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); *State* v. *Woods*, 250 Conn. 807, 815, 740 A.2d 371 (1999). The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial. *State* v. *Woods*, supra, 815. This court may dispose of the claim on any one of the conditions that the defendant does not meet. *State* v. *Golding*, supra, 240." (Emphasis in original; internal quotation marks omitted.) *State* v. *Heredia*, 253 Conn. 543, 559–60, 754 A.2d 114 (2000).

As a threshold matter, we note that although the defendant has framed these claims in terms of a denial of his right to confrontation and his due process right to a fair trial, the claims do not present constitutional issues, but rather evidentiary issues related to the court's instructions to the jury. "Clearly, the defendant has put a constitutional tag on . . . nonconstitutional evidentiary ruling[s]. *State* v. *Douglas*, 203 Conn. 445, 455, 525 A.2d 101 (1987) . . . . *State* v. *Vilalastra*, [207 Conn. 35, 46, 540 A.2d 42 (1988)]; *State* v. *Vitale*, 197 Conn. 396, 403, 497 A.2d 956 (1985); *State* v. *Gooch*, 186 Conn. 17, 18, 438 A.2d 867 (1982). *State* v. *Walker*, 215 Conn. 1, 5, 574 A.2d 188 (1990)." (Internal quotation marks omitted.) *State* v. *Person*, 215 Conn. 653, 659, 577 A.2d 1036 (1990), cert. denied, 498 U.S. 1048, 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991). "Just as every claim of evidentiary error by the trial court is not truly constitutional in nature; see, e.g., [*State* v. *Golding*, supra, 213 Conn. 241]; every claim of instructional error is not truly constitutional in nature. We have recognized, for example, that claimed instructional errors regarding

the elements of an offense; see, e.g., *State* v. *Boles,* 223 Conn. 535, 543, 613 A.2d 770 (1992); and claimed instructional errors regarding the burden of proof or the presumption of innocence; see, e.g., *State* v. *Adams,* 225 Conn. 270, 289, 623 A.2d 42 (1993); are constitutional in nature, so as to satisfy the second *Golding* requirement. We have also recognized, however, that claimed instructional errors regarding general principles of credibility of witnesses are not constitutional in nature. *State* v. *Tatum,* 219 Conn. 721, 738, 595 A.2d 322 (1991). Indeed, it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party because of a strained connection between it and a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *Dash,* 242 Conn. 143, 151–52, 698 A.2d 297 (1997). Therefore, we decline to review the defendant's claim in the present case because it merely implicates general principles of credibility related to the evidence presented, rather than a violation of constitutional magnitude, involving a fundamental right.

" 'The right to confrontation is fundamental to a fair trial under both the federal and state constitutions. *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Jarzbek,* 204 Conn. 683, 707, 529 A.2d 1245 (1987) [cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988)]; *State* v. *Reardon,* 172 Conn. 593, 599–600, 376 A.2d 65 (1977). It is expressly protected by the sixth and fourteenth amendments to the United States constitution; *Davis* v. *Alaska,* 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Pointer* v. *Texas,* supra, [403]; and by article first, § 8, of the Connecticut constitution. *State* v. *Torello,* 103 Conn. 511, 513, 131 A. 429 (1925).' *State* v. *Hufford,* 205 Conn. 386, 400–401, 533 A.2d 866 (1987). 'The right of *physical* confrontation is a . . . fundamental component of the [federal and state confronta-

tion] clauses' . . . *State* v. *Jarzbek*, supra, 692; and guarantees an accused 'the right to be present in the courtroom at every stage of his trial.' *Illinois* v. *Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970)." (Emphasis in original.) *State* v. *Cassidy*, 236 Conn. 112, 122, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), overruled on other grounds, *State* v. *Alexander*, 254 Conn. 290, 296, 755 A.2d 868 (2000).

"The defendant is entitled fully and fairly to confront and cross-examine the witnesses against him. U.S. Const., amends. VI, XIV; Conn. Const., art. I, § 8; *Davis* v. *Alaska*, [supra, 415 U.S. 318]; *State* v. *Maldonado*, 193 Conn. 350, 356, 478 A.2d 581 (1984). The primary interest secured by the right of confrontation is the right to cross-examine witnesses. *State* v. *Barrett*, 43 Conn. App. 667, 675, 685 A.2d 677 (1996), cert. denied, 240 Conn. 923, 692 A.2d 819 (1997). The defendant does have a right under the confrontation clause to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, [can] appropriately draw inferences relating to the reliability of the [state's] witness. *Davis* v. *Alaska*, supra, 318; *State* v. *Ouellette*, 190 Conn. 84, 101, 459 A.2d 1005 (1983). The confrontation clause requires that [if] the testimony of such a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to discover any infirmities that may cast serious doubt upon its truthfulness. . . . *State* v. *Morant*, 242 Conn. 666, 682, 701 A.2d 1 (1997). The right of cross-examination is not, however, absolute. *State* v. *Talton*, 197 Conn. 280, 284, 497 A.2d 35 (1985); *State* v. *Cooke*, 42 Conn. App. 790, 794, 682 A.2d 513 (1996). . . . [A] defendant's right of [cross-examination] is not infringed if the defendant fails to pursue a line of inquiry open to him. . . . The test is whether the opportunity to cross-examine existed, not whether full use of such opportunity was made. . . . *State* v. *Bruno*, 236 Conn. 514, 533, 673 A.2d

1117 (1996); *State* v. *Morant,* supra, [684]." (Internal quotation marks omitted.) *State* v. *Jones,* 50 Conn. App. 338, 360–61, 718 A.2d 470 (1998), cert. denied, 248 Conn. 915, 734 A.2d 568 (1999).

In the present case, the court stated in its charge: "[Y]ou have heard testimony that [Leroy] Townsend smoked marijuana on the night of the shooting. There is no evidence as to what effect it had on him. Because there is no such evidence, you must not speculate that he was or was not affected by it." The record does not reflect, nor does the defendant claim, that the court placed any restrictions on his ability to cross-examine Townsend on the issue of his marijuana usage. Rather, the defendant argues that the court's instruction not to speculate as to the effect of Townsend's marijuana usage was improper because it impaired his right to confrontation by precluding the jury from considering a matter that was brought before it by the mere fact that the record contained evidence that Townsend used marijuana prior to making his observations. Although the defendant had an opportunity to cross-examine Townsend on this issue, he failed to make full use of that opportunity. Accordingly, the court's instruction that the jury should not speculate on what effect the marijuana had on Townsend's perceptions did not deprive the defendant of his constitutional right to confrontation. The defendant made a tactical decision not to ask the witness what effect the marijuana had on him. Therefore, because the defendant's claim does not involve the denial of a fundamental right, the defendant's claim is not reviewable under the second prong of *Golding.*[12] Furthermore, we do not consider whether

---

[12] The dissent would have us create a new constitutional right under the label "the right to confrontation," which would include the right to comment, or have the trial court instruct, on evidence not before the jury. An evidentiary issue would then become a constitutional one. We believe that the dissent confuses what the right to confrontation encompasses.

The dissent has cited no authority for its proposition that a defendant is deprived of a fair trial in violation of a constitutional right if the trial court

the court's charge was improper and, if so, whether the claimed impropriety requires reversal.

III

The defendant next claims that the court improperly allowed the state to present evidence, through the testimony of Idella Davis, of an alleged prior crime that was not properly admissible. Specifically, the defendant argues that the court improperly admitted evidence that he illegally possessed firearms approximately one week prior to the shooting in the present case. In response, the state argues that the court did not abuse its discretion in admitting the evidence because Davis' testimony did not unduly prejudice the defendant and because it established that the defendant had the means necessary to commit the crimes charged. We agree with the state.

The state made an offer of proof, outside the presence of the jury, regarding the admission of this evidence. The defendant objected to the evidence on the grounds that it unduly prejudiced him and that it was impermissible criminal propensity evidence. The court overruled the defendant's objection and allowed the admission of the evidence.

instructs the jury not to consider facts not in evidence. The well established law in this jurisdiction is that the jury may not speculate or resort to conjecture, but may draw only reasonable and logical inferences from the proven facts. *State* v. *King*, 216 Conn. 585, 601, 583 A.2d 896 (1990). It is well established that evidentiary issues are not matters of constitutional magnitude. See *State* v. *Person*, supra, 215 Conn. 659. "The failure of the court to instruct the jury as the defendant requested is not a constitutional issue because it related solely to the jury's consideration of a piece of evidence and was purely evidentiary in nature. The defendant has placed a constitutional tag on a nonconstitutional issue. See *State* v. *Smart*, 37 Conn. App. 360, 376, 656 A.2d 677, cert. denied, 233 Conn. 914, 659 A.2d 187 (1995)." *State* v. *Riddick*, 61 Conn. App. 275, 291, 763 A.2d 1062, cert. denied, 255 Conn. 946, 769 A.2d 61 (2001). The obstacle for the defendant here is not that the court failed to allow him to confront Townsend and to elicit evidence that may have been helpful to his case, but that he did not use his opportunity on cross-examination to elicit the information that may have helped him.

"The standard of review is clear. The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . *State* v. *Cooper*, [227 Conn. 417, 426–27, 630 A.2d 1043 (1993)]. . . . *State* v. *Oliver*, 48 Conn. App. 41, 51, 708 A.2d 594, cert. denied, 244 Conn. 930, 711 A.2d 729 (1998).

"Evidence of a defendant's prior misconduct is not ordinarily admissible to prove his bad character or criminal tendencies. *State* v. *Williams*, 203 Conn. 159, 185, 523 A.2d 1284 (1987); see *State* v. *Ortiz*, 40 Conn. App. 374, 378, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996). Evidence of other misconduct, however, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity . . . or an element of the crime. . . . *State* v. *O'Neill*, 200 Conn. 268, 273, 511 A.2d 321 (1986); *State* v. *Sierra*, 213 Conn. 422, 428–29, 568 A.2d 448 (1990); *State* v. *Falby*, 187 Conn. 6, 23, 444 A.2d 213 (1982); *State* v. *Ibraimov*, 187 Conn. 348, 352, 446 A.2d 382 (1982); *State* v. *Busque*, 31 Conn. App. 120, 128, 623 A.2d 532 (1993), appeal dismissed, 229 Conn. 839, 643 A.2d 1281 (1994). Such evidence, however, to be admissible must also be relevant and material. *State* v. *Asherman*, 193 Conn. 695, 728, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Smith*, 198 Conn. 147, 157, 502 A.2d 874 (1985); *State* v. *Ibraimov*, supra, 352; *State* v. *Wiedl*, 35 Conn. App. 262, 265, 644 A.2d 1313, cert. denied, 231 Conn. 914, 648 A.2d 160 (1994).

"The trial court has broad discretion not only to rule on the relevancy of evidence; *State* v. *Jones*, 205 Conn. 638, 666–67, 534 A.2d 1199 (1987); but also to determine

the scope of cross-examination. *State* v. *Cooper*, [supra, 227 Conn. 431]; *State* v. *Hernandez*, [224 Conn. 196, 208, 618 A.2d 494 (1992)]; *State* v. *Sharpe*, 195 Conn. 651, 657, 491 A.2d 345 (1985). Uncharged misconduct evidence must satisfy a two part test in order to be admitted as an exception. The evidence must be relevant and material to at least one of the claimed exceptions and its probative value must outweigh its prejudicial effect. *State* v. *Cooper*, [supra, 427]. *State* v. *Wiedl*, supra, 35 Conn. App. 265. . . . *State* v. *Moore*, 49 Conn. App. 13, 21–22, 713 A.2d 859 (1998).

"When relevant evidence of other crimes is offered, the trial court must still consider whether its prejudicial tendency outweighs its probative value before ruling upon its admissibility. . . . *State* v. *Braman*, 191 Conn. 670, 676, 469 A.2d 760 (1983). Because of the difficulties inherent in this balancing process, we will uphold the trial court's ruling on the admission of uncharged misconduct evidence unless there is a manifest abuse of discretion or an injustice appears to have been done. Id.; *State* v. *Harris*, [43 Conn. App. 830, 837, 687 A.2d 544 (1996)]. . . . *State* v. *Vega*, 48 Conn. App. 178, 191, 709 A.2d 28 (1998)." (Internal quotation marks omitted.) *State* v. *Greene*, 52 Conn. App. 617, 619–21, 727 A.2d 765, cert. denied, 248 Conn. 922, 733 A.2d 845 (1999).

Here, the state presented an offer of proof outside the presence of the jury prior to the court's ruling on the evidence. The following exchange took place:

"[State's Attorney]: Miss Davis, on September 30, 1996, in the evening hours is it true that you made a complaint to the police about a threatening incident?

"A. Yes.

"[Defendant's Attorney]: Your Honor, I'd object. This is what goes to the heart of our motion in limine number two.

"[State's Attorney]: Which is why we're doing it without the jury being here.

"The Court: Overrule the objection.

"[State's Attorney]: Is that right?

"A. Yes.

\* \* \*

"Q. And do you recall what the address is there?

"A. No.

"Q. Would it refresh your recollection to look at a report talking about it?

"A. Yeah.

"Q. If you could read the first sentence to yourself.

"A. That's her address.

"Q. What address is that?

"A. 202 Hamilton Street.

"Q. And at that occasion did you have the opportunity to see [the defendant]?

"A. Yes.

"Q. And you saw Duane Clark?

"A. Yes.

"Q. Ryan Baldwin?

"A. Yes.

"Q. And also Duane Clark's brother Andre, is that right?

"A. I don't know the other people that was there because they was, they had something on their face.

"Q. But you saw Duane, Ryan and [the defendant]?

"A. Yes.

"Q. And did you see them in possession of weapons?

"A. Yes.

"Q. And what weapon did you see Ryan Baldwin in possession of?

"A. I didn't see his weapon because he was behind me.

"Q. And what about Duane Clark?

"A. He was on, I was trying to get in my sister's car and he just, but I saw the gun, it was like a black, like a nine or something like that, it was big.

"Q. And how about [the defendant], what kind of gun did he have, do you recall?

"A. Them western guns. It was silver and long.

"Q. Would it help refresh your recollection if you looked at this report?

"A. No, because I know what I saw but I don't know the names of the guns. I know one's a nine, I don't know the two long guns that he had or whatever.

"Q. Do you recall telling the police that [the defendant] had a nine millimeter and a revolver?

"A. It could have been. I know it was guns, that's all I know, because I was scared.

"Q. Do you recall telling the police that [the defendant] was carrying a nine millimeter and a revolver?

"A. Did I tell them?

"Q. Yes, do you recall telling them that?

"A. Yeah.

"Q. And what occurred that prompted your complaint to the police?

"A. What do you mean?

"Q. Why did you call the police, why were the police called on that occasion?

"A. Because, because they had me on the ground.

"Q. Who's they?

"A. [The defendant] and Clark and they had me on the ground. They was looking for my sister's boyfriend, just say that, they were looking for him. Beano came up to my side, he was like, where big man?

"Q. And Beano is Ryan Baldwin?

"A. Yeah. He said, where big man at? But by him saying big man, he had the gun to my side. And he was like, [the defendant] was like, everybody get on the ground, and I got on the ground and, you know, that was it.

"Q. So, on September 30, 1996, at 202 Hamilton Street you saw Beano, [the defendant] and Clark together?

"A. At that night, yeah, they was together.

"Q. And did you hear them, did you ever hear them make comments about they owned the ghetto?

\* \* \*

"A. He never said it. It somebody else that said it. I don't know who the person is that said it, this is their territory, that's all I know, this is their territory.

"Q. Who did you hear that from?

"A. Whoever was talking. He never said it out of his mouth, but it was said. I don't know which one said it.

"[State's Attorney]: Your Honor, it would be my claim that I would like to offer the fact that on September 30, 1996, that the witness observed both defendants, [Green and Clark], in possession of instrumentalities

of the crime alleged in this case some six days before the instant case here in a location in close proximity thereto. Also, the fact that they were with someone the state alleges is a coconspirator in this case. I don't, at this point in time, would not be claiming the activity in which she was held to the ground and so forth and the threats occurred. . . . Certainly, the state is offering this evidence to show that both defendants possessed an article with which the particular crime charged may have been accomplished, which these courts have all said is generally relevant to show that the accused has a means to commit the crime."

After hearing argument from all of the parties, the court stated: "The objections, counsel, are sustained in part, but the court finds that there is relevancy to this witness' testimony that on September 30, 1996, apparently she will testify at approximately 11 or 11:30 p.m. in the area of 202 Hamilton Street, I believe it was her aunt's address, that she saw [the defendant], Duane Clark and Ryan Baldwin together and that [the defendant] and Duane Clark each had a nine millimeter weapon."

Thereafter, the witness went on to testify before the jury as follows:

"[State's Attorney]: The state's going to ask you a couple more questions, Miss Davis. I want to ask you specifically about a date in 1996. September 30, 1996, at about 11:20 in the evening, were you at 202 Hamilton Street?

"A. Yes.

\* \* \*

"Q. Did you see people out there at that time?

"A. Yes.

\* \* \*

"Q. Did you see either of the defendants out there?

"A. I didn't see them until like around 11:30.

"Q. Okay, 11:30, And where did you see them?

"A. Out in the street where I was at, on the street.

"Q. And in addition to those two people, [the defendant] and [Clark], did you see anybody else?

"A. Yeah, there was more people outside.

"Q. And who were some of the other people that were outside?

"A. My sister's boyfriend, me, his cousin, my sister, my other cousin. We was all outside.

\* \* \*

"Q. Do you recall seeing Beano out there, ma'am?

"A. Yeah, he was out there.

"Q. And he's friends with [the defendant] and—

"A. Yes, Clark.

"Q. Is that right?

"A. Yes.

"Q. And did you see . . . [the defendant] and Clark with firearms?

"A. At the time, yeah.

"Q. And what kind of firearms did you see them with?

"A. One had a nine.

"Q. Who had a nine millimeter?

"A. Clark had the nine.

"Q. Okay.

"A. And [the defendant] had, [the defendant] was in the street, he had that long gun and he had like a nine too. I don't know the long gun name.

"Q. So [the defendant] had two guns?

"A. Yeah.

"Q. One of which was a nine?

"A. Yeah.

"Q. And that was on September 30, 1996?

"A. Yes.

"[State's Attorney]: No other questions."

The state argues that Davis' testimony was relevant to show that the defendant had the means to commit the crimes charged. The state further argues that the evidence did not prejudice the defendant. "Evidence indicating that an accused possessed an article with which the particular crime charged may have been accomplished is generally relevant to show that the accused had the means to commit the crime. . . . The state does not have to connect a weapon directly to the defendant and the crime. It is necessary only that the weapon be suitable for the commission of the offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Sivri*, 46 Conn. App. 578, 584, 700 A.2d 96, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997).

Here, the state presented an offer of proof prior to the court's ruling on the evidence at issue. We conclude that the court properly admitted Davis' testimony because it helped the state to prove that the defendant had the tools necessary for committing the crimes charged. Further, the evidence was material to the state's case because it helped establish the elements of the crimes charged. Specifically, the evidence estab-

lished that, prior to the crime, the defendant had a gun in his possession that was the same type of gun used in the shooting. From this evidence, the jury logically could infer that the defendant used the same gun that Davis saw him with to commit the crime.

Finally, the court recognized the possibility of prejudice to the defendant and properly weighed the probative value of the evidence versus its prejudice to the defendant. The court minimized the possibility of prejudice by limiting the state's inquiry to the solicitation of evidence regarding the defendant's possession of a firearm. The court did not allow in extraneous prejudicial material such as the fact that the defendant allegedly held the gun to the witness' head during the encounter. Accordingly, we conclude that the court did not abuse its discretion by admitting Davis' testimony that she witnessed the defendant in possession of a firearm similar to the type used to murder Jenkins approximately six days prior to the incident.

## IV

The defendant next claims that the court improperly instructed the jury regarding the state's burden of proof beyond a reasonable doubt. The state responds that the court properly charged the jury on the burden of proof because the charge did not mislead the jury. The state further argues that the courts of this state have approved the use of similar language in charging the jury on proof beyond a reasonable doubt.

The defendant challenges the following language that the court used to charge the jury: "Before you can render a verdict of guilty, the state must prove every essential element of the crime charged beyond a reasonable doubt. This phrase, reasonable doubt, has no technical or unusual meaning. You get the real meaning of the phrase if you emphasize the word reasonable. It is a doubt which is something more than a guess or sur-

mise. A reasonable doubt is not such a doubt as is raised by one who questions simply for the sake of argument. It is not a doubt suggested by counsel which is not warranted by the evidence. A reasonable doubt is a real doubt, an honest doubt, a doubt which has its foundation in the evidence offered in the case or in the absence of evidence. It is such a doubt as in serious affairs which concern yourselves you would heed. That is such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance." Specifically, the defendant alleges that the court improperly charged that (1) a reasonable doubt "is not a doubt suggested by counsel," (2) "a reasonable doubt is a real doubt, an honest doubt," (3) a reasonable doubt is "a doubt as in serious affairs" and (4) a reasonable doubt is "a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance."

The defendant concedes that he did not preserve this claim at trial and seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. We will review the defendant's claim because the record is adequate for our review and because a claim of instructional error regarding the burden of proof is of constitutional magnitude. See *State* v. *Morant*, supra, 242 Conn. 687 (defendant's unpreserved challenge to propriety of jury instruction on law of reasonable doubt satisfies second prong of *Golding*). Nevertheless, we conclude that the court's instruction did not deprive the defendant of a fair trial. Accordingly, the defendant's claim must fail.

"It is fundamental that proof of guilt in a criminal case must be beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) . . . . The [reasonable doubt concept] provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration

of our criminal law. . . . [Id.], 363. At the same time, by impressing upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused, the [reasonable doubt] standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. *Jackson* v. *Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560, reh. denied, 444 U.S. 890, 100 S. Ct. 195, 62 L. Ed. 2d 126 (1979). The defendants in a criminal case are entitled to a clear and unequivocal charge by the court that the guilt of the defendants must be proved beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *DelVecchio*, 191 Conn. 412, 419–20, 464 A.2d 813 (1983).

"In determining whether a trial court's charge satisfies constitutional requirements, however, individual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . *State* v. *Diaz*, 237 Conn. 518, 536–37, 679 A.2d 902 (1996).

"We previously have applied this standard of review in rejecting each of the claims advanced by the defendant, concluding that, in the context of the court's entire charge on reasonable doubt, the challenged language did not dilute the state's burden of proof. Thus, we have approved a reasonable doubt instruction containing the

statement that such a doubt is not a surmise, a guess or a conjecture . . . *State* v. *Simms*, 201 Conn. 395, 420, 518 A.2d 35 (1986); see also *State* v. *Derrico*, 181 Conn. 151, 170, 171 & n.4, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980) (not a surmise or a guess or a conjecture); and an instruction explaining that a reasonable doubt is not a surmise, or a guess, or a speculation . . . . *State* v. *Butler*, 207 Conn. 619, 634, 543 A.2d 270 (1988); see also *State* v. *Small*, 242 Conn. 93, 114–15 & n.17, 700 A.2d 617 (1997) (rejecting constitutional challenge to charge containing explanation that reasonable doubt is more than a guess or a surmise). We also repeatedly have upheld the constitutionality of an instruction characterizing reasonable doubt as a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence . . . *State* v. *Taylor*, 239 Conn. 481, 504–505, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997); see also *State* v. *Hines*, 243 Conn. 796, 816–20, 709 A.2d 522 (1998). Furthermore, both the United States Supreme Court; see *Victor* v. *Nebraska*, 511 U.S. 1, 18, 21, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994); and [our Supreme Court]; see *State* v. *Morant*, [supra, 242 Conn. 688]; *State* v. *Smith*, 210 Conn. 132, 147–50, 554 A.2d 713 (1989); have reached the same conclusion with respect to an explanation that reasonable doubt is a doubt that would cause a reasonably prudent person to hesitate to act in matters of importance." (Internal quotation marks omitted.) *State* v. *Griffin*, 253 Conn. 195, 205–207, 749 A.2d 1192 (2000).

This court and our Supreme Court have rejected challenges to instructions with identical or similar language to the instruction in the present case. See *State* v. *Delvalle*, 250 Conn. 466, 473–76, 736 A.2d 125 (1999);[13] *State*

[13] Although our Supreme Court has rejected constitutional challenges to the "ingenuity of counsel" instruction, it has invoked its supervisory authority over the administration of justice and directed trial courts to refrain

v. *Hines,* supra, 243 Conn. 816–20; *State* v. *Small,* supra, 242 Conn. 113–15; *State* v. *Taylor,* supra, 239 Conn. 504–505; *State* v. *Kellman,* 56 Conn. App. 279, 288, 742 A.2d 423, cert. denied, 252 Conn. 939, 747 A.2d 4 (2000). Accordingly, we conclude that the defendant has failed to demonstrate that the challenged language in the court's instruction unconstitutionally diluted the state's burden of proof.

V

The defendant's final claim on appeal is that the court improperly permitted the state to exercise a peremptory challenge against a prospective juror who was black because the state's reason for exercising the challenge was insufficient and pretextual. In response, the state argues that the defendant's claim is neither reviewable nor meritorious.

The defendant concedes that counsel did not preserve this claim at trial. Nevertheless, the defendant argues that his *Batson*[14] claim is reviewable under the *Golding* doctrine. *State* v. *Golding,* supra, 213 Conn. 239–40. "*Batson* established the guidelines for evaluating a criminal defendant's claim that the state's exercise of a peremptory challenge was based on purposeful racial discrimination. *State* v. *Holloway,* 209 Conn. 636, 640, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989); see *State* v. *Gonzalez,* 206 Conn. 391, 394–95, 538 A.2d 210 (1988). A defendant who alleges that he has been the victim of purposeful racial discrimination in the use of a peremptory challenge carries the ultimate burden of persuasion. *Batson* v. *Kentucky,* [476 U.S. 79, 94 n.18, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986)]. Once the defendant has established

from using the "ingenuity of counsel" language in future jury charges. *State* v. *Delvalle,* supra, 250 Conn. 475–76. The court's charge in the present case was given prior to the Supreme Court's admonition.

[14] *Batson* v. *Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

a prima facie case of purposeful racial discrimination, the burden shifts to the state to advance a neutral explanation for the venireperson's removal. . . . The defendant is then afforded the opportunity to demonstrate that the state's articulated reasons are insufficient or pretextual. *State* v. *Holloway,* supra, 641. Since the trial judge's findings in the context under consideration here largely will turn on evaluation of [the prosecutor's] credibility . . . a trial court's determination that there has or has not been intentional discrimination is entitled to appropriate deference upon review on appeal. . . . Id., quoting *State* v. *Gonzalez,* supra, 395. Therefore, we may overrule the trial court's conclusion only if we determine that it was clearly erroneous.

"In *Holloway,* our Supreme Court departed from *Batson* to the extent that it held that an accused does not have to first make out a prima facie case to be entitled to an explanation from the state. The court in *Holloway* stated that rather than deciding, based on the existence of a prima facie case, whether an accused is entitled to an explanation of the prosecutor's use of peremptory challenges, the better course to follow would be to hold a *Batson* hearing on the defendant's request whenever the defendant is a member of a cognizable racial group and the prosecutor exercises peremptory challenges to remove members of the defendant's race from the venire. . . . *State* v. *Holloway,* supra, 209 Conn. 646 n.4, quoting *State* v. *Jones,* 293 S.C. 54, 57–58, 358 S.E.2d 701 (1987). . . . *State* v. *Patterson,* 37 Conn. App. 801, 805–807, 658 A.2d 121 (1995), rev'd on other grounds, 236 Conn. 561, 674 A.2d 416 (1996), quoting *State* v. *Patterson,* 31 Conn. App. 278, 290, 624 A.2d 1146 (1993), rev'd on other grounds, 230 Conn. 385, 645 A.2d 535 (1994)." (Internal quotation marks omitted.) *State* v. *Thomas,* 50 Conn. App. 369, 374–75, 717 A.2d 828 (1998), appeal dismissed, 253 Conn. 541, 755 A.2d 179 (2000).

"In *State* v. *Patterson*, [230 Conn. 385, 393, 645 A.2d 535 (1994)], our Supreme Court concluded that because the defendant can waive one of the primary rights protected by judicial supervision of the entire voir dire, namely, his equal protection right against discriminatory peremptory challenges, the defendant can also waive the right to judicial supervision over the voir dire process itself. It follows that the defendant can waive part of the process intended to protect his equal protection right, that is, his opportunity to demonstrate that the state's neutral explanation of its peremptory challenge is in fact pretextual.

"The *Patterson* court also held that, in such circumstances, waiver can be made by counsel, and it will ordinarily be inferred from the absence of an objection." (Internal quotation marks omitted.) *State* v. *Thomas*, supra, 50 Conn. App. 376. In the present case, the record indicates that defense counsel did not join in the codefendant's objection to the venireperson's removal at trial. Moreover, the defendant did not take exception to the court's ruling denying his codefendant's *Batson* claim or to the state's proffered race neutral reason for excusing the venireperson. We conclude, therefore, that the defendant waived his opportunity to make a *Batson* claim and his right to respond to the state's explanation of its peremptory challenge. See *State* v. *Hodge*, 248 Conn. 207, 228, 726 A.2d 531 ("[b]ecause a disparate treatment claim raises factual questions that must be decided by the trial court, the defendant's failure to raise the claim in the trial court is fatal to his claim on appeal"), cert. denied, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319 (1999). Hence, because we find that the defendant's claim is not reviewable, we need not address whether it is meritorious.

The judgment is reversed only as to the conviction of the crime of conspiracy to commit murder and the case is remanded with the direction to render judgment

of not guilty of that crime. The judgment is affirmed in all other respects.

In this opinion LANDAU, J., concurred.

LAVERY, C. J., dissenting. The majority's opinion is clearly contrary to the United States Supreme Court's holding in *Davis* v. *Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974), when the majority upholds the trial court's charge that the jury could not consider the effect of marijuana use on the state's key witness, the only witness who identified the defendant as the shooter. By so doing, the majority denies the jury, as the sole trier of fact and credibility, the right to consider facts from which it could draw inferences about the reliability and credibility of the witness. Thus, I respectfully dissent from the majority's conclusion that the court's instruction[1] that the jury could not consider the effect on the state's key witness of the witness' smoking of five marijuana joints shortly before the shooting did not violate a fundamental constitutional right.

The majority asserts that we may only review the defendant's claim, if at all, under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because the defendant failed adequately to object to the claimed error in the instruction. Although I would find, as discussed in this dissenting opinion, that the four requirements of *Golding* have been met in this case, I would conclude that the defendant adequately preserved this claim for direct review by this court, thus obviating the need to resort to *Golding*.

---

[1] The relevant portion of the court's instruction is as follows: "Also you have heard testimony that [Leroy] Townsend smoked marijuana the night of the shooting. There is no evidence as to what effect it had on him. Because there is no such evidence, you must not speculate that he was or was not affected by it or how he was affected by it." Counsel for the codefendant, Duane Clark, objected to this portion of the charge, and the court declined to reinstruct the jury. See *State* v. *Clark*, 62 Conn. App. 182, 204, 774 A.2d 183 (2001).

It is undisputed that the codefendant, Duane Clark, objected to the instruction and took an exception at the time the court charged the jury. Our Supreme Court has held, in another case in which only one of two codefendants objected to inappropriate comments by the prosecutor during closing arguments, that "the failure by this defendant fully to challenge the conduct of the prosecutor at trial would not be dispositive, since his codefendant *adequately alerted the trial court to the possibility of error in a timely fashion.*" (Emphasis added.) *State* v. *Pelletier*, 196 Conn. 32, 34, 490 A.2d 515 (1985); see also *State* v. *Jones*, 193 Conn. 70, 88, 475 A.2d 1087 (1984) (purpose of requiring party to except is to alert court to alleged impropriety while time exists to correct it without need for new trial). Here, the codefendant's exception to the instructions fully alerted the court to the alleged impropriety. Thus, the failure of *this* defendant to raise the same exception should not deprive him of the ability to challenge the instruction here.

The majority concludes that the defendant's claim that the court improperly instructed the jury not to consider the effect of marijuana use on the credibility of the state's key witness is not reviewable under *Golding* because the instruction did not deprive the defendant of a fundamental constitutional right. I disagree with this characterization of the defendant's claim since the jury instruction at issue violated his right to confront and impeach a witness against him, a right guaranteed both by the sixth amendment to the United States constitution and by article first, § 8, of the constitution of Connecticut.[2]

---

[2] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

The majority reasons that not all claims of instructional error are constitutional in nature and cites *State* v. *Dash*, 242 Conn. 143, 152, 698 A.2d 297 (1997), for the proposition that "claimed instructional errors regarding *general principles of credibility* of witnesses are not constitutional in nature." (Emphasis added; internal quotation marks omitted.)

While these two propositions put forth by the majority as its basis for dismissing this claim as nonconstitutional are true, they do not prove the point. First, the error claimed here is not about general principles of credibility of witnesses. The error claimed here concerns *one* instruction about the credibility of *one* witness. Second, the fact that not all instructional errors are constitutional in nature does not mean that *this* instructional error claim is not constitutional in nature.

As the United States Supreme Court stated in *Davis*: "[I]t seems clear . . . that to make any [effort to impeach a witness] effective, defense counsel should [be] permitted to expose to the jury the facts from which jurors, *as the sole triers of fact and credibility*, could appropriately draw inferences relating to the reliability of the witness." (Emphasis added.) *Davis* v. *Alaska*, supra, 415 U.S. 318; see also *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992); *State* v. *Lubesky*, 195 Conn. 475, 482, 488 A.2d 1239 (1985).

This court previously has stated that "a criminal defendant's right to impeach the witnesses against him implicates his constitutional right to confrontation. *State* v. *Rodriguez*, 180 Conn. 382, 393, 429 A.2d 919 (1980). The confrontation clause gives the defendant the right to confront the witnesses against him." *State* v. *Menzies*, 26 Conn. App. 674, 684, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992). "The denial or undue restriction of the right to confrontation constitutes *constitutional error. Davis* v. *Alaska*, [supra, 415

U.S. 318]; *State* v. *Ouellette*, 190 Conn. 84, 101, 459 A.2d 1005 (1983)." (Emphasis added.) *State* v. *Streater*, 36 Conn. App. 345, 352, 650 A.2d 632 (1994), cert. denied, 232 Conn. 908, 653 A.2d 195 (1995); see also *State* v. *Lee*, 229 Conn. 60, 70, 640 A.2d 553 (1994).

Because the defendant elected a jury trial, he had a right to have all questions of fact decided by the jury, which courts have often referred to as "the sole triers of fact and credibility . . . ." *Davis* v. *Alaska*, supra, 415 U.S. 318; *State* v. *Santiago*, supra, 224 Conn. 331; *State* v. *Jones*, 60 Conn. App. 866, 869, 761 A.2d 789 (2000), cert. denied, 255 Conn. 942, 769 A.2d 59 (2001). In its capacity as the trier of fact, the jury "is the judge of the credibility of all the witnesses and the weight to be given their testimony and, therefore, has the right to accept part or disregard part of a witness' testimony." (Internal quotation marks omitted.) *In re Deana E.*, 61 Conn. App. 197, 208, 763 A.2d 45 (2000).

This court previously has stated that the effect of alcohol consumption on a witness' ability accurately to observe and later recall what he observed "is an effect which is common knowledge and is an inference which is clearly within the ability of the jurors, as laypersons, to draw based on their own common knowledge and experience. The jury may, without the aid of expert testimony, use the consumption of alcohol as a basis on which to *infer* impairment of ability to observe and recall accurately." (Emphasis added.) *State* v. *Heinz*, 3 Conn. App. 80, 86, 485 A.2d 1321 (1984), citing *D'Amato* v. *Johnston*, 140 Conn. 54, 58, 97 A.2d 893 (1953) (intoxication and its accompaniments are matter of common knowledge).

In addition, the state, on prior occasions, has successfully impeached a witness by inviting the jury to draw inferences from the witness' use of marijuana, and our Supreme Court has endorsed such a practice. In *State* v. *Person*, 215 Conn. 653, 577 A.2d 1036 (1990), cert.

denied, 498 U.S. 1048, 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991), the state's attorney had questioned a defense witness about his use of marijuana. Justifying this line of questioning, the state's attorney argued: "It's highly relevant. I claim that as highly relevant. He has testified as far as *perceptions of what he observed, what he heard, what he saw, his observations.* And, my point here is that he was not in complete control of his faculties . . . ." (Emphasis added; internal quotation marks omitted.) Id., 661 n.4. Our Supreme Court noted that the state "sought to raise doubt as to [the witness'] ability to observe and perceive events, an entirely permissible subject . . . ." Id., 661. In addition, our Supreme Court noted in *Person* that "[t]he *prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of witnesses.*" (Emphasis added; internal quotation marks omitted.) Id., 666 n.8.

Prior to the Supreme Court's decision in *Person,* this court considered the use of testimony about drug use for impeachment purposes in *State* v. *Person,* 20 Conn. App. 115, 564 A.2d 626 (1989), aff'd, 215 Conn. 653, 577 A.2d 1036 (1990), cert. denied, 498 U.S. 1048, 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991). In *Person,* we stated that, "[t]he prosecutor's initial purpose in questioning [the witness] regarding his use of marijuana was to impeach his credibility by casting doubt on his ability to perceive and recall the events that were the subject of his testimony. The capacity of a witness to observe, recollect and narrate an occurrence is a proper subject of inquiry on cross-examination. . . . *Consumption of alcohol or drugs obviously can impair an individual's ability to perceive and recall accurately* . . . ." (Citation omitted; emphasis added.) Id., 121–22.

Where the issue of impeaching a witness' credibility by his drug or alcohol use has arisen in the past, neither this court nor our Supreme Court has required, as a predicate, that an expert witness instruct the jury as

to the effects of alcohol or drugs on the witness' ability to perceive and recall events. This has been true whether the drug in question was alcohol, marijuana or cocaine.

There have been a number of cases in which both this court and our Supreme Court have held that ordinary people, namely, jurors, can judge for themselves whether a witness' admitted use of drugs would, in their opinion, affect that witness' credibility. "The trier of fact *need not close its eyes to matters of common knowledge solely because the evidence includes no expert testimony on these matters.*" (Emphasis added.) *Way* v. *Pavent,* 179 Conn. 377, 380, 426 A.2d 780 (1979). In *Way,* the plaintiff had consumed ten glasses of beer and, without any expert testimony, the Supreme Court approved of permitting the jury to draw its own inferences on the effects of that quantity of alcohol, finding it to be a "[matter] of common knowledge . . . ." Id.

If, in 1979, the effects of ten ten-ounce glasses of beer were common knowledge, then it is fair to say that in 2001, the effects of several marijuana cigarettes are common knowledge. In fact, in 1993, this court approved of a trial court's statement to a jury that "the effect of alcohol on a person and also the effect of marijuana on a person . . . [are] probably within your common knowledge, but [defense counsel] has asked me to allow this to be presented as an exhibit so that he could argue from this what he feels the marijuana and alcohol, what role they played in this case. So . . . it's offered solely for the purpose of explaining to you *something you already know, the effect of marijuana* . . . on a person." (Emphasis added.) *State* v. *Charlton,* 30 Conn. App. 359, 368–69 n.9, 620 A.2d 1297, cert. denied, 225 Conn. 922, 625 A.2d 824 (1993).

I therefore would conclude that it was improper for the trial court to instruct the jury not to draw any

conclusions in the absence of testimony, expert or otherwise, as to the probable effects of the witness' smoking of five marijuana joints shortly before the incident on the night of the shooting on his ability to perceive and recall accurately the events. I also would conclude, for the reasons stated previously, that this impropriety was constitutional in nature, as it violated the defendant's fundamental constitutional right to confront his accusers.

Having concluded that the second requirement of *Golding* has been met, I address the other three requirements.[3] There is an adequate record. Although the defendant did not raise the issue at trial, his codefendant did so on several occasions. Because this was a joint trial, any claim by one defendant as to an improper jury instruction, unless the instruction was directed to the jury to apply only to that defendant, which was not the case here, put the trial court on notice of the claimed impropriety in its instructions. The failure by *this* defendant fully to challenge the conduct of the court at trial is not dispositive because his codefendant adequately alerted the court to the possibility of error in a timely fashion. See *State* v. *Pelletier*, supra, 196 Conn. 34.

The third *Golding* requirement, that the alleged violation clearly exists and clearly deprived the defendant of a fair trial, also has been met in this case. The court's instruction precluded the jury from rejecting the witness' testimony as incredible on the basis of his use of marijuana. Absent this instruction, the jury might well have rejected his testimony in whole. Had the jury done so, it would inexorably have reached the conclusion that insufficient evidence existed to convict the defendant of murder as an accessory, since the witness sup-

---

[3] Because the majority concluded that the second prong of *Golding* was not satisfied, it did not analyze the other three prongs, as all four must be satisfied for a claim to be successful.

plied the only evidence that the defendant fired a gun at the scene. Precluding the jury from reaching this conclusion deprived the defendant of a fair trial.

Finally, the fourth *Golding* requirement, that the state has failed to prove the harmlessness of the alleged constitutional violation beyond a reasonable doubt, has also been met. The witness whose credibility the defendant sought to place in doubt on the basis of his use of marijuana shortly prior to the shooting (a fact admitted by all parties and thus beyond question) provided the most harmful testimony against the defendant. He alone testified to seeing the defendant fire a gun and to hearing the codefendant instruct the defendant to do so. Without this testimony, the jury would have had no evidence that the defendant was in possession of a gun at the scene, the second count on which he was convicted. Without this testimony, the jury would have lacked the evidence the majority rightly points to as the two facts supporting the defendant's conviction of accessory to murder, namely, that the defendant "fired multiple shots from a nine millimeter handgun at the scene" and that the defendant "did this in response to someone saying, 'Shoot the mother . . . .' " I cannot say that the alleged constitutional violation was harmless.

Because this action precluded the jury from considering important facts bearing on the credibility of the only witness[4] who placed the defendant at the scene and in possession of a gun, I would find that the instruction was improper and satisfies all of the *Golding* requirements. I therefore would reverse the judgment and remand the case for a new trial.

---

[4] The witness' credibility was the key factor in the trial. He was impeached with prior felonies and inconsistent statements. He came forward as a witness three weeks after the incident, when he was incarcerated. Further, the witness' own cousin testified that he was a pathological liar.