# STATE OF CONNECTICUT *v.* TIMOTHY MONROE
## (AC 26465)

McLachlan, Harper and Lavine, Js.

Argued September 15—officially released December 5, 2006

*Robert E. Byron*, special public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Margaret E. Kelley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Timothy Monroe, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (3), interfering with an officer in violation of General Statutes § 53a-167a (a) and carrying a dangerous weapon in violation of General Statutes § 53-206 (a).[1] On appeal, the defendant claims that the trial court improperly rejected his claim that the state, during jury selection, exercised a peremptory challenge in a racially discriminatory manner. We affirm the judgment of the trial court.

The charges against the defendant arose from an incident that occurred on the afternoon of October 9, 2003, in Bridgeport. A man wearing a mask and carrying a knife entered a store on East Main Street. He demanded money from the owner, and she told him to get it himself. The perpetrator was unable to open the

---

[1] The court rendered a judgment of acquittal on one charge of reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a), and the jury found the defendant not guilty of a second charge of reckless endangerment in the first degree in violation of § 53a-63 (a).

cash register and was chased from the store by a male employee. During the chase, a police officer in his patrol car observed the situation, stopped his car and pursued the two men. After he caught up with the employee and was advised of the attempted robbery, the officer continued to pursue the defendant and arrested him shortly thereafter.

The defendant elected to be tried by a jury. During jury selection, the state attempted to exercise a peremptory challenge following the voir dire examination of venireperson W.[2] Defense counsel then made a *Batson*[3] challenge, requesting that the state provide a race neutral reason on the record for exercising the peremptory challenge. After the prosecutor articulated her reason and defense counsel had the opportunity to respond, the court permitted the peremptory challenge to be exercised. The defendant, who is African-American, claims that the state's use of a peremptory challenge to strike W, who is also African-American,[4] violated his constitutional rights because it was exercised in a racially discriminatory manner in violation of *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

Before addressing the merits of the defendant's claim, we set forth the legal principles that govern our review. "In *Batson* [v. *Kentucky*, supra, 476 U.S. 79] the United States Supreme Court recognized that a claim of purposeful racial discrimination on the part of the prosecution in selecting a jury raises constitutional questions of the utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of

---

[2] We refer to the venireperson by initials to protect her legitimate privacy interests. See, e.g., *State* v. *Wright*, 86 Conn. App. 86, 88 n.3, 860 A.2d 278 (2004).

[3] *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[4] Although the record is not clear as to her race, the state acknowledged at oral argument that W is African-American.

the judicial system as a whole. . . . The court concluded that [a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his [or her] view concerning the outcome of the case to be tried . . . the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race . . . .

"Under Connecticut law, [o]nce a [party] asserts a *Batson* claim, the [opposing party] must advance a neutral explanation for the venireperson's removal. . . . The [party asserting the *Batson* claim] is then afforded the opportunity to demonstrate that the [opposing party's] articulated reasons are insufficient or pretextual. . . . [T]he trial court then [has] the duty to determine if the [party asserting the *Batson* claim] has established purposeful discrimination. . . . The [party asserting the *Batson* claim] carries the ultimate burden of persuading the trial court, by a preponderance of the evidence, that the jury selection process in his or her particular case was tainted by purposeful discrimination. . . .

"We have identified several specific factors that may indicate that [a party's removal] of a venireperson through a peremptory challenge was . . . motivated [by race or gender]. These include, but are not limited to: (1) [t]he reasons given for the challenge were not related to the trial of the case . . . (2) the [party exercising the peremptory strike] failed to question the challenged juror or only questioned him or her in a perfunctory manner . . . (3) prospective jurors of one race [or gender] were asked a question to elicit a particular response that was not asked of the other jurors . . . (4) persons with the same or similar characteristics but not the same race [or gender] as the challenged juror were not struck . . . (5) the [party exercising the peremptory strike] advanced an explanation based on

a group bias where the group trait is not shown to apply to the challenged juror specifically . . . and (6) the [party exercising the peremptory strike] used a disproportionate number of peremptory challenges to exclude members of one race [or gender]. . . .

"In assessing the reasons proffered in support of the use of a peremptory challenge . . . [a]n explanation . . . need not . . . be pigeon-holed as wholly acceptable or wholly unacceptable . . . and even where the acceptability of a particular explanation is doubtful, the inquiry is not at an end. In deciding the ultimate issue of discriminatory intent, the judicial officer is entitled to assess each explanation in light of all the other evidence relevant to prosecutorial intent. The officer may think a dubious explanation undermines the bona fides of other explanations or may think that the sound explanations dispel the doubt raised by a questionable one. As with most inquiries into state of mind, the ultimate determination depends on an aggregate assessment of all the circumstances. . . .

"Finally, the trial court's decision on the question of discriminatory intent represents a finding of fact that will necessarily turn on the court's evaluation of the demeanor and credibility of the attorney of the party exercising the peremptory challenge. . . . Accordingly, a trial court's determination that there has or has not been intentional discrimination is afforded great deference and will not be disturbed unless it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *State v. Peeler*, 267 Conn. 611, 620–22, 841 A.2d 181 (2004).

We now turn to the factual underpinnings of the defendant's claim. After both parties had questioned W,

the state exercised a peremptory challenge to strike her from the panel. The defendant then raised an objection under *Batson*, and the court instructed the prosecutor to articulate a race neutral reason for the exercise of the peremptory challenge. The prosecutor noted that W was often responding to questions before the questions were completed and that she was concerned that W did not understand the "beyond a reasonable doubt" standard of proof. In particular, the prosecutor stated that W, from her answers, appeared to require proof beyond all doubt or to her personal certainty.

Defense counsel responded by acknowledging that W was "obviously very opinionated" but stressed that she had indicated that she would follow the law as instructed by the judge. Further, defense counsel disagreed with the prosecutor's recollection of W's responses and argued that all of her responses were appropriate.

The court, in ruling on the *Batson* challenge, first found that there had been no pattern of exclusion by the state.[5] It further stated that W was a very strong,

---

[5] The record is not clear how many African-Americans were members of the venire panel. The defendant makes the representation in his appellate brief that a total of three African-Americans were members of that panel, and the state has not disputed that representation. The defendant excused one African-American, the state excused W and the record is silent as to the third African-American venireperson.

The defendant claims that the court improperly considered the absence of a pattern of discrimination in making its ruling because "the striking of even one juror on the basis of race violates the equal protection clause . . . ." *State* v. *Gonzalez*, 206 Conn. 391, 400, 538 A.2d 210 (1988). As we previously noted, however, one of the factors to be taken into account in determining whether a peremptory challenge was motivated by race is whether "the [party exercising the peremptory strike] used a disproportionate number of peremptory challenges to exclude members of one race . . . ." *State* v. *Peeler*, supra, 267 Conn. 622. Accordingly, the court was correct in noting that there had been no pattern of excluding African-American venirepersons by the state. See *State* v. *Holloway*, 209 Conn. 636, 644, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989).

opinionated and bright young woman who obviously was confused about the concept of reasonable doubt. The court indicated that the totality of W's responses indicated her confusion and that it understood the state's concern as articulated. The court concluded that the prosecutor had given a sufficient race neutral reason to exercise the peremptory challenge.

On appeal, the defendant claims that W's responses did not reveal any confusion or reservation about the concept of reasonable doubt. For that reason, the defendant argues that the explanation given for the peremptory challenge had to have been pretextual and racially motivated because it was unfounded and far removed from the evidence. The defendant acknowledges that the proffered explanation was race neutral but claims that the court could not conclude that it was credible. We disagree.

"The state's concern that [a venireperson has] displayed a misunderstanding of and a questionable commitment to the prevailing standard of proof beyond a reasonable doubt, if adequately substantiated, satisfies *Batson* because a prosecutor has a legitimate interest in obtaining jurors who will faithfully adhere to the governing burden of proof." (Internal quotation marks omitted.) *State* v. *Smith*, 222 Conn. 1, 12, 608 A.2d 63, cert. denied, 506 U.S. 942, 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992). A review of the voir dire examination of W supports the prosecutor's concern that W was confused as to the proper standard of proof in a criminal trial, i.e., proof beyond a reasonable doubt. W indicated that if she had lingering doubts in her mind, she would have to "see something or hear something again" because she "need[ed] to be sure." She later repeated that "I have to be sure. . . . Sure enough for me."

In response to defense counsel's inquiry as to how she would vote if there was some evidence but not

enough to "erase all the doubts" in her mind, she stated that it would depend, that she did not really know. She responded "right" when defense counsel stated that "proof beyond a reasonable doubt means you can't have any doubts in your mind" and that "[y]ou can't have any real doubt [in your mind]."

The defendant claims that any confusion was on the part of counsel and not W. Further, the defendant notes that W repeatedly confirmed that she would follow the law as given by the court. "[A] prosecutor is not bound to accept the venireperson's reassurances, but, rather, is entitled to rely on his or her own experience, judgment and intuition in such matters." *State* v. *Hodge*, 248 Conn. 207, 231, 726 A.2d 531, cert. denied, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319 (1999). We cannot say, in light of W's entire voir dire examination, that the belief expressed by the prosecutor that W was confused as to the concept of beyond a reasonable doubt was unreasonable or otherwise lacking support in the record. See id., 233.

Finally, the defendant argues that the state did not exercise peremptory challenges against Caucasian venirepersons who responded to inquiries before they were completed or who gave the same or similar responses to questions on the applicable burden of proof in a criminal case. That argument was made in the defendant's reply brief and during oral argument. The defendant quoted from transcript excerpts of the voir dire examinations of other venirepersons to support that contention.

Defense counsel, however, did not present that argument to the court at the time he made his *Batson* challenge. Only now, on appeal, does the defendant elaborate that claim of pretext. The trial court was not

asked to rule on that issue and never had the opportunity to do so.[6] "Because a disparate treatment claim raises factual questions that must be decided by the trial court, the defendant's failure to raise the claim in the trial court is fatal to his claim on appeal." Id., 228.

We conclude that the court's rejection of the defendant's *Batson* challenge was not clearly erroneous. "[T]he fact-bound determination concerning the propriety of the use of peremptory challenges is a matter that necessarily must be entrusted to the sound judgment of the trial court, which, unlike an appellate court, can observe the attorney and the venireperson and assess the attorney's proffered reasons in light of all the relevant circumstances." Id., 261. Here, the court determined that the reasons offered by the prosecutor for striking W were race neutral, supported by the record and not pretextual. The court properly determined that the state had not exercised its peremptory challenge in a racially discriminatory manner.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] "[W]e will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 527, 890 A.2d 140, cert. denied, 277 Conn. 928, 895 A.2d 798 (2006).

The defendant did not ask for review of this claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or under the doctrine of plain error. See *State* v. *Martinez*, 95 Conn. App. 162, 170 n.5, 896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006).