STATE OF CONNECTICUT *v.* ULISES COLLAZO
(AC 28878)

DiPentima, Gruendel and Pellegrino, Js.

Argued April 23—officially released July 21, 2009

*James B. Streeto,* assistant public defender, for the appellant (defendant).

*Rita M. Shair,* senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III,* state's attorney, and *David R. Shannon,* assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Ulises Collazo, appeals from the judgment of conviction, rendered after a jury trial, of one count of assault in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-59 (a) (5), three counts of assault in the first degree as an accessory in violation of §§ 53a-8 and 53a-59 (a) (1), three counts of assault in the first degree as an accessory in violation of §§ 53a-8 and 53a-59 (a) (4), one count of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (1), and one count of conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (4).[1] On appeal, the defendant claims that the trial court improperly (1) failed to order an evaluation of his competency to stand trial and to conduct an independent inquiry as to the need for such evaluation, (2) instructed the jury that it could find him guilty as either a principal or an accessory and (3) denied his *Batson*[2] challenge. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On July 30, 2004, Rudy Ortiz, the president of the Danbury Latin Kings, was involved in a fight with several young men from Stamford. Ortiz was angry about the fight and wanted revenge. Ortiz crafted a plan to

[1] The jury found the defendant not guilty of one count of assault in the first degree as an accessory.

[2] See *Batson* v. *Kentucky,* 476 U.S. 79, 96–98, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

seek his revenge and arranged for Sabrina Colon, who knew one of the men from Stamford, Keven Louis, to invite the Stamford men to Danbury. On August 2, 2004, five men from Stamford, Louis, Cliff Certillian, Kenny Poteau, Herbie Servil and Stanley Bruno, arrived at a basketball court at Eden Drive in Danbury. Waiting in the bushes to ambush the five Stamford men were Ortiz, Juan Macias, Luis Guzman, Alex Garcia, the defendant and a few others. As the five Stamford men walked onto the basketball court, Macias and the defendant followed them. After a prearranged signal, the defendant threw the first punch, and the remaining Danbury men ran out from the bushes to continue the assault. Gunshots were heard.

Garcia had a nine millimeter assault rifle and shot Louis once in the leg and at least once more in the abdomen. Servil suffered twelve to thirteen separate stab wounds to his back, abdomen and right arm, one of which damaged his liver. Bruno ran off but was either shot or stabbed in the back, resulting in a collapsed lung. The defendant elected a trial by jury and was tried together with Garcia.[3] The jury found the defendant guilty of seven counts of assault in the first degree as an accessory and two counts of conspiracy to commit assault in the first degree. He was sentenced to a total effective term of thirty-five years incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the court denied him due process of law by improperly denying his counsel's request for a competency evaluation, pursuant to General Statutes § 54-56d,[4] and by failing to conduct an

---

[3] *State* v. *Garcia*, 115 Conn. App. 766, 973 A.2d 1278 (2009).

[4] General Statutes § 54-56d provides in relevant part: "(a) . . . A defendant shall not be tried, convicted or sentenced while the defendant is not competent. For the purposes of this section, a defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense. . . .

independent inquiry to determine the need for such an evaluation. We disagree.

The very incident that the defendant claims denied him due process occurred in the Danbury Superior Court on April 13, 2006, when he was before the court for a status conference involving this matter and an additional unrelated criminal matter. See *State* v. *Collazo*, 113 Conn. App. 651, 967 A.2d 597, cert. denied, 293 Conn. 904, 976 A.2d 705 (2009). On that date, attorney Robert Field represented the defendant in both cases. The defendant, at that status conference, informed the judge that he did not want Field to represent him. Field informed the court that the defendant was very contentious, would not listen to him, would yell at him, told him that he did not know what he was doing and threatened to file a slander lawsuit against him. Field suggested that the defendant might have bipolar disorder or intermittent explosive disorder and moved for a competency examination. After the court questioned the defendant, it denied the request for a competency examination. The court, however, appointed new counsel to represent the defendant.

The defendant argues here, as he did in *State* v. *Collazo*, supra, 113 Conn. App. 651, that he was denied due process because the court denied his request for a competency examination and failed to conduct an independent inquiry to determine the need for such an evaluation. After its review of the April 13, 2006 transcript, this court observed in its opinion that the attorney-client relationship had broken down, the defendant did not want Field to represent him and that the defendant responded appropriately to the court's questions and presented himself as being able to think

"(c) . . . If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency. . . ."

reasonably and lucidly. Id., 663–64. This court concluded in *Collazo* that the trial court did not abuse its discretion by denying the defendant's motion for a competency examination. Id., 665.

We will not conduct an additional analysis of the defendant's claim, as it has been decided previously. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 406, 968 A.2d 416 (2009); see also *State* v. *Jones*, 98 Conn. App. 695, 704–706, 911 A.2d 353 (2006) (res judicata barred defendant from raising sufficiently similar claim previously decided), cert. denied, 281 Conn. 916, 917 A.2d 1000 (2007). This claim was raised previously, fully and fairly argued in this court and a decision was rendered. Moreover, once the defendant was provided with new trial counsel, no additional claims as to his competency were ever raised. Neither his new trial counsel, nor the judge presiding over his criminal trial, raised any issue regarding the defendant's competency. Accordingly, this claim fails.

## II

The defendant next claims that the court improperly instructed the jury that it could find him guilty as either a principal or an accessory on the counts of assault in the first degree. The defendant did not raise his claim

in the trial court and did not object at trial to the court's instruction on principal liability. The defendant contends, however, that the claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We agree that the record is adequate for review and that the defendant raises a constitutional claim with regard to his rights to present a defense and to notice of the charges against him. We do not agree, however, that the claimed constitutional violation clearly exists because we conclude that the defendant waived this claim at trial. This claim, therefore, fails under the third prong of *Golding*.

"Waiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy. . . . Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim. . . .

"Under [*State* v. *Golding*, supra, 213 Conn. 239–40], a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. The

first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial. . . .

"A defendant in a criminal prosecution may waive one or more of his or her fundamental rights. . . . In the usual *Golding* situation, the defendant raises a claim on appeal which, while not preserved at trial, at least was not waived at trial. . . . In *Fabricatore*, our Supreme Court cited with approval opinions of this court holding that a defendant who has waived a constitutional right at trial cannot prevail on that claim on appeal. In [*State* v. *Cooper*, 38 Conn. App. 661, 670, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996), this court] held that a defendant could not satisfy the third prong of *Golding* where he had implicitly waived at trial a challenge to the alleged constitutional deprivation that was the basis of his claim on appeal. Therefore, a defendant cannot prevail under *Golding* on a claim that he implicitly waived at trial. . . . [This court] determined that the defendant's claim [in *Cooper*] was reviewable under the first two prongs of *Golding*, but concluded that, because he had waived his right to have the state prove all elements of his crime, he failed to demonstrate that the alleged constitutional violation clearly existed. . . .

"In *Cooper*, this court also concluded that the defendant had waived any challenge to the alleged constitutional violation because the defendant not only failed to object to the court's instruction, but also voiced satisfaction with it. . . . To allow [a] defendant to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state with that claim on appeal." (Citations omitted; internal quotation marks omitted.) *State* v. *McDaniel*, 104 Conn. App. 627, 633–34,

934 A.2d 847 (2007), cert. denied, 285 Conn. 912, 943 A.2d 471 (2008). In the present matter, during the charging conference, the court indicated that the state had asked for a charge on both principal and accessory liability as to each count. After a discussion regarding the elements of the assault charge and that the jury could find the defendant guilty as either a principal or as an accessory, defense counsel, when asked for comment replied, "I have no comment at this time," and, "I'm in agreement." After continued discussion regarding the jury charge, defense counsel expressed concern over the instruction for count two that the instrument that caused the injury must be a firearm and not a knife. After even further discussion, defense counsel then stated: "I have no disagreement with the way the court's going to charge it; it's just how it's going to charge because there—it's in [the] alternative each way, and if the court . . . [is] . . . going to group them . . . this is a confusing long form information . . . for the jurors, who really are unfamiliar."

The defendant's right to challenge the jury instruction on appeal was effectively waived. Defense counsel expressed his concern that, as to the charge on count two, § 53a-59 (a) (5) requires that the injury must be from a firearm and not a knife. Defense counsel, however, expressed no disagreement with the jury instruction as to assault in the first degree as both a principal and an accessory. Moreover, two days later, once the jury had been instructed in its entirety, the court again asked counsel if there were any exceptions to the charges as given, and defense counsel stated: "Nothing from the defense . . . for [the defendant]." Accordingly, we conclude that because the defendant has waived this claim, there is no clear, existing constitutional violation, and thus the claim fails to satisfy the third prong of *Golding*.

## III

The defendant's final claim is that the court improperly denied a *Batson* challenge, after the state exercised a peremptory challenge against B[5] in a discriminatory manner during voir dire.[6] B stated that she was born in New York and went to high school and college there. She stated that she is married, has one child and works as a teacher. At some point, she went to the Dominican Republic but had returned to New York seventeen years ago, prior to moving to Connecticut. B stated that she previously had served on a jury in a criminal case in New York. The defendant accepted B as a juror, but the state exercised a peremptory challenge and dismissed her. Because the defendant and B are both Hispanic, the defendant raised a *Batson* challenge.[7] The prosecutor responded that he was exercising his challenge on two grounds: (1) B was a teacher, and "there is the stereotype [that] teachers are sometimes more sympathetic, not always the best jurors for the state," and (2) B had never heard of the Latin Kings, and "there hasn't been a juror that I've taken who hasn't heard at least the term Latin King, to my knowledge." The court

[5] We refer to the venireperson by initial to protect legitimate privacy interests. See, e.g., *State* v. *Wright*, 86 Conn. App. 86, 88 n.3, 860 A.2d 278 (2004).

[6] The state relies on *State* v. *Lane*, 101 Conn. App. 540, 548–49, 922 A.2d 1107, cert. denied, 283 Conn. 910, 928 A.2d 538 (2007), and *State* v. *Owens*, 63 Conn. App. 245, 263, 775 A.2d 325, cert. denied, 256 Conn. 933, 776 A.2d 1151 (2001), and argues that this court need not reach the merits of this claim because B's ethnicity was not established prior to the court's ruling on the *Batson* challenge, and thus the record is inadequate for review. We choose to reach the merits, however, because unlike in *Lane* and *Owens*, B's ethnicity was established on the record, albeit after the court had made its ruling.

[7] B did not state her ethnicity on the juror questionnaire. Prior to the court's ruling on the *Batson* challenge, neither the court nor the prosecutor would affirmatively say that B was Hispanic. The court, however, after its ruling, had B return to the courtroom to ask her ethnicity, to which she responded that she is Hispanic.

noted that the jury already included a Hispanic venireperson and denied the defendant's *Batson* challenge.

"In *Batson* . . . the United States Supreme Court recognized that a claim of purposeful racial discrimination on the part of the prosecution in selecting a jury raises constitutional questions of the utmost seriousness . . . . [T]he Equal Protection Clause [of the fourteenth amendment] forbids the prosecutor to challenge potential jurors solely on account of their race . . . ." (Internal quotation marks omitted.) *State* v. *Monroe*, 98 Conn. App. 588, 590–91, 910 A.2d 229 (2006), cert. denied, 281 Conn. 909, 916 A.2d 53 (2007).

"Under Connecticut law, [o]nce a [party] asserts a *Batson* claim, the [opposing party] must advance a neutral explanation for the venireperson's removal. . . . The [party asserting the *Batson* claim] is then afforded the opportunity to demonstrate that the [opposing party's] articulated reasons are insufficient or pretextual. . . . [T]he trial court then [has] the duty to determine if the [party asserting the *Batson* claim] has established purposeful discrimination. . . . The [party asserting the *Batson* claim] carries the ultimate burden of persuading the trial court, by a preponderance of the evidence, that the jury selection process in his or her particular case was tainted by purposeful discrimination." (Internal quotation marks omitted.) Id., 591. "[T]he trial court's decision on the question of discriminatory intent represents a finding of fact . . . . Accordingly, a . . . court's determination that there has or has not been intentional discrimination is afforded great deference and will not be disturbed unless it is clearly erroneous." (Internal quotation marks omitted.) Id., 592. "Nonetheless, because of the constitutional implications of the alleged defects in the jury selection process, in reviewing the defendant's claims under the state constitution, we will subject the findings of the trial court to the same independent and

scrupulous examination of the entire record that we employ in our review of constitutional fact-finding . . . . We invoke that heightened review, however, within the broader context of the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *State* v. *Morales*, 71 Conn. App. 790, 802–803, 804 A.2d 902, cert. denied, 262 Conn. 902, 810 A.2d 270 (2002).

As noted, after the defendant asserted his *Batson* claim, the state responded with two reasons for its peremptory challenge. Additionally, the prosecutor argued that he had already accepted a Hispanic juror so that there was no pattern of purposeful discrimination. Once the prosecutor had offered his race neutral reasons, the burden of persuasion rested on the defendant to demonstrate to the court that the state purposefully discriminated against this potential juror. See *State* v. *Hamlett*, 105 Conn. App. 862, 878, 939 A.2d 1256, cert. denied, 287 Conn. 901, 947 A.2d 343 (2008). The court, after stating that it was not sure that being a school-teacher was a reason to excuse a juror, ultimately concluded that "out of four jurors, one is clearly Hispanic. And ultimately after one—[the defendant has] the burden of proving that the selection process is tainted by purposeful discrimination. I can't conclude that there's purposeful discrimination on the record before me."

On appeal, the defendant argues that the state made no attempt to determine specifically whether B's occupation as a teacher caused her to have the liberal bias for which the prosecutor excused her. Additionally, the defendant argues that the state had accepted other, non-Hispanic jurors who had not heard of the Latin Kings. The defendant claims that the prosecutor's reasons for excusing B were inadequate and pretextual, and, therefore, the court improperly denied the defendant's *Batson* challenge. We disagree.

Our review of the record reveals that the following day, the prosecutor corrected the record to indicate that he had actually accepted the first two Hispanic jurors prior to exercising his peremptory challenge as to B. The first Hispanic juror that the prosecutor had accepted was excused by the defendant. In light of the prosecutor's reasons and his acceptance of two Hispanic jurors, we cannot say that the court's determination that there was no pattern of discrimination and that its rejection of the defendant's *Batson* challenge was clearly erroneous. "[T]he fact-bound determination concerning the propriety of the use of peremptory challenges is a matter that necessarily must be entrusted to the sound judgment of the trial court, which, unlike an appellate court, can observe the attorney and the venireperson and assess the attorney's proffered reasons in light of all the relevant circumstances." *State v. Hodge*, 248 Conn. 207, 261, 726 A.2d 531, cert. denied, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319 (1999). Although the court did not specifically think that B's occupation as a teacher was a reason to excuse her, the court ultimately determined that there was no pattern of discrimination and denied the defendant's *Batson* challenge.

We note, however, that "[p]eremptory challenges based on employment reasons have been upheld." *State v. Cepeda*, 51 Conn. App. 409, 425, 723 A.2d 331, cert. denied, 248 Conn. 912, 732 A.2d 180 (1999); see, e.g., *United States v. Johnson*, 4 F.3d 904, 913–14 (10th Cir. 1993) (striking teacher race neutral), cert. denied sub nom. *Nottingham v. United States*, 510 U.S. 1123, 114 S. Ct. 1082, 127 L. Ed. 2d 398 (1994); *United States v. Nelson*, 450 F.3d 1201, 1208 (10th Cir.) (no racially discriminatory intent in explanation that teachers or other highly educated persons do not make good jurors), cert. denied, 549 U.S. 937, 127 S. Ct. 326, 166 L. Ed. 2d 244 (2006); *Williams v. State*, 939 S.W.2d 703,

706 (Tex. App. 1997) (excusing teacher race neutral when defendant did not challenge explanation); *State* v. *Sanders*, 263 Kan. 317, 327, 949 P.2d 1084 (1997) (race neutral to strike one teacher and not another when nonexcused teacher had sister who was victim of crime), superseded by statute on other grounds as stated in *State* v. *Bedford*, 269 Kan. 315, 327, 7 P.3d 224 (2000). Moreover, the defendant did not contest the peremptory challenge on the ground that the state's reason was due to B's employment; defense counsel stated instead: "I'm not going to claim that one, but I am going to claim the second part because she doesn't know the Latin Kings, and she is Hispanic."

The prosecutor's second reason, that B previously had not heard of the Latin Kings, appears to have been accepted as race neutral by the court. "A neutral explanation means an explanation based on something other than the race of the juror. . . . [T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. . . . If the prosecutor's reason, however, is without regard to the particular circumstances of the trial or the individual responses of the jurors, [it] may be found by the trial judge to be a pretext for racial discrimination. . . . The factors that might be used to determine pretext have been discussed by our appellate courts. . . . [This] include[s] whether the prosecutor's reasons are related to the case . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, 37 Conn. App. 801, 807, 658 A.2d 121 (1995), rev'd on other grounds, 236 Conn. 561, 674 A.2d 416 (1996). Here, B was excused because she had not heard of the Latin Kings, and the potential involvement of the defendant with the Latin Kings was related to the case. Accordingly, we cannot conclude that the court's denial of the defendant's *Batson* challenge was clearly erroneous.

We conclude, therefore, that the court properly determined that the state had not exercised its peremptory challenge in a racially discriminatory manner.

The judgment is affirmed.

In this opinion the other judges concurred.