## STATE OF CONNECTICUT *v.* ALEX GARCIA
### (AC 29501)

DiPentima, Gruendel and Pellegrino, Js.

Argued April 23—officially released July 21, 2009

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Stephen J. Sedensky III*, state's attorney, and, on the brief, *David R. Shannon*, assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Alex Garcia, appeals from the judgment of conviction, rendered after a jury trial, of one count of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), two counts of assault in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-59 (a) (1), two counts of assault in the first degree as an accessory in violation of §§ 53a-8 and 53a-59 (a) (4), one count of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (1), and one count of conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (4). On appeal, the defendant claims that the trial court improperly (1) allowed Michael Walker, an orthopedic surgeon, to testify as to an assault victim's statement regarding the cause of his injury, which was testimonial in nature, and violated the defendant's right to confront the victim and (2) denied a *Batson*[1] challenge. We affirm the judgment of the trial court.

---

[1] See *Batson* v. *Kentucky*, 476 U.S. 79, 96–98, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

The jury reasonably could have found the following facts. On July 30, 2004, Rudy Ortiz, the president of the Danbury Latin Kings, was involved in a fight with several young men from Stamford. Ortiz was angry about the fight and wanted revenge. Ortiz crafted a plan to seek his revenge and arranged for Sabrina Colon, who knew one of the men from Stamford, Keven Louis, to invite the Stamford men to Danbury. On August 2, 2004, the five victims from Stamford, Louis, Cliff Certillian, Kenny Poteau, Herbie Servil and Stanley Bruno, arrived at a basketball court at Eden Drive in Danbury. Waiting in the bushes to ambush the five Stamford men were Ortiz, Juan Macias, Luis Guzman, Ulises Collazo, the defendant and a few others. As the five Stamford victims walked onto the basketball court, Macias and Collazo followed them. After a prearranged signal, Collazo threw the first punch, and the remaining Danbury men ran out from the bushes to continue the assault. Gunshots were heard.

The defendant had a nine millimeter assault rifle and shot Louis once in the leg and at least once more in the abdomen. Servil suffered twelve to thirteen separate stab wounds on his back, abdomen and right arm, one of which damaged his liver. Bruno ran off but was either shot or stabbed in the back, an injury which resulted in a collapsed lung. The defendant elected a trial by jury and was tried together with Collazo.[2] The jury found the defendant guilty of all counts. He was sentenced to a total effective term of forty years incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

On appeal, the defendant first claims that the court improperly admitted the testimony of Walker about Bruno's description of the alleged cause of his injuries

---

[2] *State* v. *Collazo*, 115 Conn. App. 752, 974 A.2d 729 (2009).

in violation of the defendant's federal constitutional right under the confrontation clause. The defendant argues that Bruno's statement to Walker was testimonial and therefore should have been excluded under *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Specifically, the defendant claims that the admission of Bruno's statement regarding his injuries, introduced through Walker's testimony, violated the defendant's right to confront Bruno. In the alternative, the defendant argues that if this court finds that Bruno's statement to Walker was nontestimonial, it still should have been excluded under the state constitution's confrontation clause.

At trial, Walker, who treated Bruno, testified that when he treats a patient, he typically asks the patient what caused the injury. He asked Bruno what caused his injury and did so because "the mechanism of injury is very important to what the injuries could be," and it is very helpful in the treatment of his patients. Walker also testified that he does not ask questions to gain information for law enforcement or for testimony in court. He further testified that his handwritten report stated that "patient heard gunshot, felt injury in the back."

At trial, the defendant's counsel objected, claiming that because Walker indicated that Bruno believed that his wound was a gunshot wound and Bruno was not testifying, the defendant was denied the right to cross-examine Bruno. In response, the prosecutor argued that (1) the testimony came within the medical exception to the hearsay rule, (2) the availability of Bruno was immaterial and (3) the testimony did not implicate *Crawford* v. *Washington*, supra, 541 U.S. 36. After a review of the relevant law, the court overruled the objection, stating that the testimony was for diagnostic purposes in an emergency situation and was not gathered in a testimonial sense for repetition in a courtroom.

On appeal, the defendant argues that Bruno's statement to Walker was testimonial and therefore should have been excluded under *Crawford*. The defendant argues that this court must determine "whether a reasonable person in Bruno's position would have believed his statements would be available for use in his assailants' trial."

The defendant argues that Bruno should have realized that his statement would be used because the police were present when the ambulance arrived for him and he was questioned by police officers at the hospital. Additionally, the nurses helped lift him up so that the police officers could photograph his wound. Therefore, according to the defendant, Bruno must have known that the physicians and nurses were cooperating with the police, and a reasonable person would have concluded that his statements would be used as part of the police investigation.[3] The state, on the other hand, argues that Bruno's statement to Walker was in response to his question and was nontestimonial; therefore, the court properly admitted Bruno's statement through Walker's testimony. We agree with the state.

Our review of the court's determination as to the testimonial nature of a victim's statement to a treating physician regarding an injury is plenary. See *State* v. *Kirby*, 280 Conn. 361, 389, 908 A.2d 506 (2006). The defendant's claim regarding Walker's testimony as to what Bruno told him regarding his injury implicates the third formulation of testimonial statements under *Crawford*, namely, "statements that were made under circumstances which would lead an objective witness

---

[3] The defendant argues in the alternative that if this court finds the testimony to be nontestimonial in nature, then this court should conclude that the state constitution's confrontation clause protects defendants from unreliable nontestimonial hearsay. We reject this claim because we find that the statement properly was admitted under Connecticut Code of Evidence § 8-3 (5).

reasonably to believe that the statement would be available for use at a later trial . . . ." (Internal quotation marks omitted.) *Crawford* v. *Washington*, supra, 541 U.S. 52. "Most courts considering statements made for medical treatment . . . have concluded that, if an interview is done strictly for medical purposes, and not in anticipation of criminal proceedings, the statement would be considered nontestimonial. . . . [I]f a statement is made as part of an investigation by government officials the statement is generally considered testimonial." (Internal quotation marks omitted.) *State* v. *Kirby*, supra, 389. "The key to the inquiry is whether the examination and questioning were for a diagnostic purpose and whether the statement was the by-product of substantive medical activity. . . . Also significant to whether the statement is testimonial is whether such statements . . . accuse or identify the perpetrator of the assault." (Citation omitted; internal quotation marks omitted.) Id., 391.

In the present matter, in response to a direct question from Walker regarding the cause of Bruno's injury, Bruno replied that he had heard a gunshot and felt a pain in his back. Walker did not ask the question for law enforcement. Walker testified that he asks the cause of injury of all his patients because the cause of an injury is helpful to the diagnosis and treatment of a patient. Additionally, Bruno was questioned by the police while at the hospital. More importantly, Bruno did not specifically identify anyone as his attacker when he replied that he had heard a gunshot and felt a pain in his back.

On the basis of *Kirby* and in light of the foregoing, we conclude that Bruno's statement to Walker was not testimonial under *Crawford*, and, therefore, the court properly admitted it under the medical treatment hearsay exception.

II

The defendant's next claim, raised in a supplemental brief submitted to this court, is that the court improperly denied a *Batson* challenge, after the state exercised a peremptory challenge in a discriminatory manner during voir dire. During the course of jury selection, the state exercised a peremptory challenge against B.[4] B stated that she was born in New York and went to high school and college there. She stated that she is married, has one child and works as a teacher. At some point, she went to the Dominican Republic but had returned to New York seventeen years ago, prior to moving to Connecticut. B stated that she previously had served on a jury in a criminal case in New York. The defendant and Collazo accepted B as a juror, but the state exercised a peremptory challenge and dismissed her. The defendant and Collazo, as well as B, are Hispanic; therefore, Collazo raised a *Batson* challenge.[5] The defendant concedes that he did not speak during the objection. He claims, however, that to the extent that Collazo raised this issue, this court could deem it a preserved constitutional issue. We disagree.

In *State* v. *Green*, 62 Conn. App. 217, 247, 774 A.2d 157 (2001), aff'd, 261 Conn. 653, 804 A.2d 810 (2002), this court held that a defendant who does not join in a codefendant's objection to a venireperson's removal waives his right to make a *Batson* claim and his right to respond to the state's explanation of its peremptory challenge. "In *State* v. *Patterson*, [230 Conn. 385, 393,

---

[4] We refer to the venireperson by initial to protect legitimate privacy interests. See, e.g., *State* v. *Wright*, 86 Conn. App. 86, 88 n.3, 860 A.2d 278 (2004).

[5] B did not state her ethnicity on the juror questionnaire. Prior to the court's ruling on the *Batson* challenge, neither the court nor the prosecutor affirmatively stated that B was Hispanic. The court, however, after its ruling, had B return to the courtroom to ask her ethnicity, to which she responded that she is Hispanic.

645 A.2d 535 (1994)], our Supreme Court concluded that because the defendant can waive one of the primary rights protected by the judicial supervision of the entire voir dire, namely, his equal protection right against discriminatory peremptory challenges, the defendant can also waive the right to judicial supervision over the voir dire process itself. It follows that the defendant can waive part of the process intended to protect his equal protection right, that is, his opportunity to demonstrate that the state's neutral explanation of its peremptory challenge is in fact pretextual.

"The *Patterson* court also held that, in such circumstances, waiver can be made by counsel, and it will ordinarily be inferred from the absence of an objection." (Internal quotation marks omitted.) *State* v. *Green,* supra, 62 Conn. App. 247. Accordingly, our Supreme Court in *Green* held that the defendant's failure to join his codefendant's objection to the removal of the venireperson and his failure to take exception to the court's ruling or the state's proffered race neutral reason waived his opportunity to make a *Batson* claim. Id. The court, therefore, deemed his claim not reviewable and did not address the merits of his argument. Id. The present matter is indistinguishable from *Green.* The record indicates that at the time Collazo made his *Batson* challenge, the defendant did not object and remained silent. Moreover, similar to the situation in *Green,* the defendant also did not take an exception to the court's ruling denying Collazo's *Batson* challenge or to the state's proffered race neutral reason for excusing the venireperson. We conclude, therefore, that this claim was waived at trial and is not reviewable on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.